IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM J. SEYMOUR, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 20-2282-JWL |
| ) | |
| TONGANOXIE UNIFIED SCHOOL ) | |
| DISTRICT NO. 464, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PRETRIAL ORDER**

A pretrial conference was conducted in this case on May 11, 2021, by U.S. Magistrate Judge Teresa J. James. Plaintiff, William J. Seymour, appeared through counsel, Raymond A. Dake of Siro Smith Dickson PC. Defendant Unified School District No. 464, appeared through counsel, Gregory P. Goheen of McAnany Van Cleave & Phillips, PA.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

**1)    PRELIMINARY MATTERS.**

   **a)    Subject-Matter Jurisdiction.** The Court has subject-matter jurisdiction under 28 U.S.C. §1331 in that it involves claims arising under federal statutes, specifically the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and is

1

not disputed.

    **b)**     **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

    **c)**     **Venue.** Venue in this court is proper based upon 28 U.S.C. § 1391 and is not disputed.

    **d)**     **Governing Law.** Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

    i.     Counts III and IV of Plaintiff's Complaint are governed by the ADEA.

**2)**     **STIPULATIONS.**

    **a)**     The following facts are stipulated:

1.     Plaintiff is a 61 year-old male.

2.     Plaintiff began his employment as a custodian with Defendant on or about July 15, 1991.

3.     Plaintiff's last position with Defendant was Facilities and Grounds Coordinator.

4.     Defendant is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the State of Kansas and K.S.A. §§ 72-1131, *et seq.*

5.     Defendant is an "employer" of Plaintiff within the meaning of the ADEA.

6.     Loren Feldkamp was hired as Defendant's Superintendent in or around April

2018, with his contract starting on July 1, 2018.

**b)** It is stipulated by the parties that, for purposes of any summary judgment motions and trial, all exhibits marked and/or used during depositions taken in this matter and all documents produced during discovery in this matter, to include documents produced in response to any subpoenas issued to third parties, meet the standards for foundation and authenticity and that copies may be used in lieu of originals. The parties reserve their rights to object to the admissibility in summary judgment motions or at trial on any other grounds, including without limitation, relevance, hearsay, materiality, prejudice, confusion, duplication, waste of time, improper character evidence, privilege, improper lay opinion, lack of personal knowledge, and/or competency. The parties will further work in good faith to submit a final comprehensive listing of any stipulated exhibits no less than three (3) days prior to trial.

**3)** **FACTUAL CONTENTIONS.**

**a)** **Contentions of Plaintiff.**

Plaintiff is a 61-year old male who was employed as the Facilities and Grounds Coordinator by Defendant. Plaintiff was employed by Defendant from on or about July 15, 1991 until his wrongful termination from employment on or about April 9, 2019. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the ADEA and is entitled to all the benefits and protections of those laws. Defendant was an "employer" of Plaintiff within the meaning of the ADEA.

Throughout his employment with Defendant, Plaintiff performed all duties of his job as required, met or exceeded the expectations of his position, and received good reviews for his work. Plaintiff was fired at age 58 and replaced by a much younger independent contractor who was hired as an employee, for demonstrably false reasons, and after Plaintiff made complaints of age discrimination to human resources. This is an ADEA discrimination and retaliation case brought by Plaintiff, William Seymour, against his former employer and Defendant, the Tonganoxie USD 464 School District.

After Superintendent Loren Feldkamp took over on or about July 1, 2018 and continuing through Plaintiff's wrongful termination on or about April 9, 2019, Plaintiff was subjected to a pattern and practice of age discrimination and/or retaliation for his complaints of discriminatory treatment by Defendant. Plaintiff experienced disparate and/or retaliatory treatment by Defendant in the terms and conditions of his employment, including but not limited to, by terminating his employment for false reasons, while similarly situated, substantially younger employees and/or independent contractors were either treated more favorably by not being subjected to the same type of unfounded criticisms of their work[1]; failing to follow the Defendant's progressive discipline policy as

---

[1] Defendant objects to this contention, arguing that Plaintiff has failed to identify in his Complaint (ECF No. 1) or in his responses to written discovery (Interrogatory No. 13) any such employees or independent contractors and therefore Plaintiff should not be able to include this allegation as a claim at this point in the proceedings. Plaintiff disagrees and argues instead that this information has been put forth throughout deposition testimony and through documents produced in this case, and the individuals treated more favorably are identified through Plaintiff's testimony, the testimony of Tonya Phillips, Loren Feldkamp, Jim Bothwell, Kaija Baldock, Audra Boone, Mitchell Loomis, and Mark Farrar. Further, Plaintiff argues these individuals are listed in Plaintiff's Rule 26 Disclosures, and the coordinators and directors were identified in his Complaint, Charge, and throughout discovery in this matter, as all of the other coordinators supervised by Mr. Feldkamp were younger than Plaintiff and treated more favorably by having their contracts renewed and not being subjected to false performance criticisms. The Court noted that Plaintiff was not required to specifically identify these younger employess in the Complaint and overruled

outlined in Defendant's policies and procedures[2]; failing to conduct performance reviews as required under Defendant's policies and procedures[3]; removing Plaintiff from job duties and projects and giving them to a younger employee or independent contractor; hiring, and retaining substantially younger employees[4]; terminating Plaintiff for false, pretextual

---

Defendant's objection to the extent that specific individuals who are younger and were treated differently from Plaintiff have been identified in Initial Disclosures and/or through discovery.

[2] Defendant objects to this contention, arguing that Plaintiff has failed to assert in his Complaint (ECF No. 1) or in his responses to written discovery (Interrogatory No. 8) this is an act of discrimination by Defendant and therefore Plaintiff should not be able to include this allegation as a claim at this point in the proceedings. Plaintiff disagrees and argues instead that this information has been put forth throughout deposition testimony and through documents produced in this case, including the progressive discipline policy itself. Plaintiff also argues this failure to follow policy goes directly to show that Defendant's actions were pretext for its discriminatory and retaliatory motive to terminate Plaintiff and is central to Defendant's defense that it terminated Plaintiff for performance issues and that he was on an over 2 year old performance improvement plan. And, this issue was identified through Plaintiff's testimony, the testimony of Tonya Phillips, Loren Feldkamp, Jim Bothwell, Kaija Baldock, Audra Boone, Mitchell Loomis, and Mark Farrar. According to Plaintiff, failing to follow the policies set forth and adopted by the District and its board was part of Defendant's pattern and practice of disparate treatment in the terms and conditions of Plaintiff's employment as outlined in Plaintiff's Complaint, Charge, and throughout discovery in this matter. The Court overruled Defendant's objection, finding that the failure to follow policy goes to pretext. Also, that this issue was timely raised is highlighted by Judge Lungstrum's Memorandum and Order (ECF No. 29), which notes Plaintiff's allegation that he was subject to unfounded discipline.

[3] Defendant objects to this contention, arguing that Plaintiff has failed to assert in his Complaint (ECF No. 1) or in his responses to written discovery (Interrogatory No. 8) this is an act of discrimination by Defendant and therefore Plaintiff should not be able to include this allegation as a claim at this point in the proceedings. Plaintiff disagrees and argues instead that this information has been put forth throughout deposition testimony and through documents produced in this case, including the performance review policy for classified employees itself. Plaintiff also argues this failure to follow policy goes directly to show that Defendant's actions were pretext for its discriminatory and retaliatory motive to terminate Plaintiff and is central to Defendant's defense that it terminated Plaintiff for performance issues and that he was on an over 2 year old performance improvement plan. And, this issue was identified through Plaintiff's testimony, the testimony of Tonya Phillips, Loren Feldkamp, Jim Bothwell, Kaija Baldock, Audra Boone, Mitchell Loomis, and Mark Farrar. According to Plaintiff, failing to follow the policies set forth and adopted by the District and its board was part of the Defendant's pattern and practice of disparate treatment in the terms and conditions of Plaintiff's employment as outlined in Plaintiff's Complaint, Charge, and throughout discovery in this matter. The Court overruled Defendant's objection for the same reasons given in n.2.

[4] Defendant objects to this contention, arguing that Plaintiff has failed to assert in his Complaint (ECF No. 1) or in his responses to written discovery (Interrogatory No. 8) this is an act of discrimination by Defendant and therefore Plaintiff should not be able to include this allegation as a claim at this point in the proceedings. Plaintiff disagrees and argues instead that this information has been put forth throughout deposition testimony and through documents produced in this case, and the younger individuals were treated more favorably and their employment was retained. Plaintiff argues those individuals are identified through Plaintiff's testimony, the testimony of Tonya Phillips, Loren Feldkamp, Jim Bothwell, Kaija Baldock, Audra Boone, Mitchell Loomis, and Mark Farrar. Further, Plaintiff argues these individuals are listed in Plaintiff's Rule 26 Disclosures, and the coordinators and directors were identified in his Complaint, Charge, throughout discovery in this matter, as all of the other coordinators supervised by Mr.

reasons; replacing Plaintiff in the interim with a less-qualified, substantially younger employee who did not work in the maintenance department instead of using older employees qualified for the job; and hiring the less-qualified, substantially younger employee who did not work in the maintenance department to replace Plaintiff.

From July 2018 until Plaintiff's termination, Mr. Feldkamp asked Plaintiff multiple times when he planned to retire. Plaintiff complained about these age-related discriminatory comments to Human Resources, including within weeks prior to his termination. Three to four weeks prior to Plaintiff's termination on April 9th, Mr. Feldkamp asked Plaintiff again if he was planning on retiring any time soon. He responded, as he always did, that he did not plan on retiring any time soon. He reported this to Human Resources.

On or about April 9, 2019, Mr. Feldkamp told Plaintiff that the District was "going in a different direction" and that Plaintiff's contract would not be renewed. The next day, the District posted Plaintiff's position as Facilities and Grounds Coordinator for hiring, and on April 10, 2019, it hired a less-qualified, substantially younger individual, Mitchell Loomis (age 33), who was not a part of the maintenance department or an employee of the District for the position. Mr. Loomis has no custodial, general maintenance (including plumbing & electrical), or HVAC experience. While the District claims this was an interim

---

Feldkamp were younger than Plaintiff and treated more favorably by having their contracts renewed and not being subjected to false performance criticism. The Court overruled Defendant's objection, as the allegations are included in the Complaint and noted in Judge Lungstrum's Memorandum and Order (ECF No. 29).

position, the District refused to place either person who was "second in command" in the position after Plaintiff was terminated, even though this was only for around four weeks. The older individuals who would regularly cover for Plaintiff if he was on vacation, Charlie Brady (early 60s) and Chris Croley (mid 40s), were not even asked to cover the position by Defendant. Defendant instead brought Mr. Loomis in for the position, who Mr. Feldkamp had asked in October of 2018 to join the District full time in the maintenance department to take over Plaintiff's duties, and asked prior to the April 8th Board Meeting to take the position. Mr. Loomis then held himself out as the full-time Facilities and Grounds Coordinator, by, among other things, attending contractor meetings, not including "Interim" in his email signature, making purchases for the District, sending out District-wide surveys to all building staff, taking over the turf field installation, and meeting with architects for the District's bond proposal and project, all at the insistence and direction of Mr. Feldkamp. This occurred during the four weeks he served as "interim" coordinator.

The interviews for the Facilities and Grounds Coordinator position were conducted May 6, 2019. The District interviewed five candidates for the position, however, no interview notes were kept from the interviews, and they were all destroyed. Mr. Feldkamp presented Mr. Loomis as the selected candidate to the School Board President, Jim Bothwell, on the 6th of May. Mr. Bothwell expressed concerns hiring Mr. Loomis required justification because of the "perception that he was handpicked" for the position and given that he lacked experience. Mr. Loomis was subsequently hired by the District and approved by the Board, with no investigation into Plaintiff's complaints of age discrimination.

Plaintiff received a letter "RE: Improvement Plan" dated January 26, 2017 from former Superintendent Chris Kleidosty. Plaintiff did not necessarily agree with the contents of the letter and many things were merely changes to his position and responsibilities, not necessarily areas of improvement. Mr. Kleidosty's employment with the District was terminated about three weeks later.  Plaintiff was never placed on any kind of discipline or performance improvement plan under Mr. Feldkamp (who started in July of 2018) nor was he on a plan at the time of his termination. In Plaintiff's April 2017 performance review from Tonya Phillips, the Interim Superintendent, she rated Plaintiff all "meets" or "exceeds" expectations. Nowhere in that April 10th, 2017 Personnel Evaluation does it show "Needs Improvement." As indicated, in the January 26, 2017 Improvement Plan put in place by Mr. Kleidosty, Plaintiff was to meet all of the objectives of the plan by June 30, 2017. The April 10, 2017 Personnel Evaluation, which outlines that Plaintiff is meeting or exceeding his expectations in all areas, mentions nothing about continuing the performance improvement plan past the June 30, 2017 date. The Board of Education renewed Plaintiff's Contract for the 2017-18 School Year beginning on July 1, 2017. There is no documentation regarding Plaintiff's performance or continuing a performance plan after the April 10, 2017 Personnel Evaluation. Ms. Phillips failed to conduct a performance review for Plaintiff in April of 2018 even though this is against policy. Plaintiff's contract was subsequently renewed again for the 2018-19 School Year beginning on July 1, 2018, without issue. There is nothing in Plaintiff's personnel file, nor any documentation that supports that Mr. Feldkamp placed Plaintiff on any performance improvement plan or ever

disciplined him for his performance. Nor is there any documentation or support for the assertion that Mr. Feldkamp continued or reinstated the prior performance improvement plan that ended on June 30, 2017. Mr. Feldkamp never met with Plaintiff at any time regarding a performance plan and did not follow any steps of the progressive discipline policy related to Plaintiff or his performance prior to Plaintiff's termination.

The true reasons for the discriminatory employment actions of Defendant against Plaintiff, including, but not limited to those adverse employment actions set forth above, were illegal age discrimination and/or due to retaliation for Plaintiff's complaints of illegal, discriminatory treatment.

On April 19, 2019, Plaintiff filed a timely charge alleging age discrimination and retaliation against Defendant with the Kansas Human Rights Commission ("KHRC") and this charge was dual-filed with the Equal Employment Opportunity Commission ("EEOC"). On June 7, 2019, Plaintiff filed a timely amended charge alleging sex and age discrimination and retaliation against Defendant with KHRC and EEOC. On or about March 12, 2020, the United States Department of Justice and the EEOC mailed Notices of Right to Sue letters to Plaintiff. This case was filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC and DOJ. Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

After his wrongful termination, Plaintiff applied for his earned benefits under the Kansas Public Employees Retirement System (KPERS) on April 26, 2019. These benefits did not start until after July 1, 2019. Plaintiff was forced to apply for these benefits due to

his illegal, discriminatory, and retaliatory termination by the District, and had no plans to do so prior to being terminated. Plaintiff earned these benefits over his 28 years with the District and is entitled to take them and continue working in positions outside of the District. Plaintiff is not retired. Instead, Plaintiff was wrongfully terminated, and diligently looked for work after his termination from the District. Despite diligent efforts to find employment after his termination, Plaintiff has been unable to do so. Plaintiff continues to look for work. Plaintiff vehemently denies any characterization by Defendant that he is retired and that he has not sought to return to the workforce. Plaintiff has provided evidence and testimony that he is not retired and that he has continued to diligently search for work since his wrongful termination. Defendant has provided no evidence to rebut Plaintiff's claim.

Defendant has provided no evidence that it would have terminated Plaintiff for any of his conduct discussed in Defendant's factual contentions or discovered after his termination on April 9th, 2019. All conduct mentioned by Defendant in their factual contentions happened after the decision to terminate the Plaintiff was made and conveyed to Plaintiff, and after a replacement had been discussed and decided on by Mr. Feldkamp, as Mitchell Loomis.

**b)    Contentions of Defendant.**

Defendant is a unified school district and governmental subdivision of the State of Kansas, duly organized and existing pursuant to Article 6, § 5 of the Constitution of the

State of Kansas and K.S.A. §§ 72-1131, *et seq.* Defendant is governed by its duly elected board of education and maintains policies prohibiting discrimination based upon, *inter alia*, age and retaliation and provides a process for employees and others to make complaints about any alleged discrimination or retaliation. Plaintiff was last employed as a Buildings and Grounds Coordinator by Defendant for the 2018-19 school year. During his employment, Defendant was made aware numerous concerns with Plaintiff's performance and behavior. In January, 2017, Plaintiff was placed on a Performance Improvement Plan by his then supervisor and he remained on that improvement plan throughout the remainder of his employment with Defendant. During this time, Plaintiff was supervised by three (3) different superintendents each of whom met with Plaintiff on numerous occasions to discuss and address concerns with his performance and behavior. On or about April 9, 2019, Plaintiff was advised that a recommendation would be made to Defendant's Board of Education that Plaintiff's employment not be renewed for the 2019-2020 school year. On April 17, 2019, Defendant's Board of Education voted to not renew Plaintiff's employment for the 2019-2020 school year.

  Plaintiff was paid his full salary and benefits for the 2018-19 school year (July 1, 2018-June 30, 2019). Plaintiff applied for retirement under the Kansas Public Employees Retirement System (KPERS) on April 26, 2019 with a retirement date of July 1, 2019. Plaintiff began receiving KPERS retirement benefits on July 1, 2019. Since his retirement, Plaintiff has never sought to return to the workforce and has otherwise failed to mitigate his damages.

State of Kansas and K.S.A. §§ 72-1131, *et seq.* Defendant is governed by its duly elected board of education and maintains policies prohibiting discrimination based upon, *inter alia*, age and retaliation and provides a process for employees and others to make complaints about any alleged discrimination or retaliation. Plaintiff was last employed as a Buildings and Grounds Coordinator by Defendant for the 2018-19 school year. During his employment, Defendant was made aware numerous concerns with Plaintiff's performance and behavior. In January, 2017, Plaintiff was placed on a Performance Improvement Plan by his then supervisor and he remained on that improvement plan throughout the remainder of his employment with Defendant. During this time, Plaintiff was supervised by three (3) different superintendents each of whom met with Plaintiff on numerous occasions to discuss and address concerns with his performance and behavior. On or about April 9, 2019, Plaintiff was advised that a recommendation would be made to Defendant's Board of Education that Plaintiff's employment not be renewed for the 2019-2020 school year. On April 17, 2019, Defendant's Board of Education voted to not renew Plaintiff's employment for the 2019-2020 school year.

Plaintiff was paid his full salary and benefits for the 2018-19 school year (July 1, 2018-June 30, 2019). Plaintiff applied for retirement under the Kansas Public Employees Retirement System (KPERS) on April 26, 2019 with a retirement date of July 1, 2019. Plaintiff began receiving KPERS retirement benefits on July 1, 2019. Since his retirement, Plaintiff has never sought to return to the workforce and has otherwise failed to mitigate his damages.

Subsequent to being advised that his employment would be recommended for nonrenewal, Plaintiff engaged in conduct that would have resulted in his termination. Specifically, Plaintiff maliciously and intentionally contacted a vendor of Defendant which was supplying rental chairs for that year's graduation ceremony and cancelled the order. Additionally, Plaintiff was charged with disorderly conduct in connection with accosting a female member of Defendant's board of education on a public street while she was jogging. Plaintiff subsequently entered into a diversion agreement in connection with this incident.

Defendant denies that it discriminated, based upon Plaintiff's age, or retaliated against Plaintiff and asserts that it, at all times, acted, in good faith, for legitimate non-discriminatory/non-retaliatory reasons. Plaintiff never submitted any complaints of age discrimination under Defendant's policies or procedures. Defendant further denies that it violated Plaintiff's rights, if any, under the ADEA. Defendant denies that Plaintiff is entitled to any of the requested damages or relief. Defendant denies that its conduct has caused Plaintiff any damages and further denies causation, the nature and extent of Plaintiff's alleged damages.

**4)  LEGAL CLAIMS AND DEFENSES.**

    **a)  Legal Claims of Plaintiff.**

Plaintiff asserts that he is entitled to recover upon the following theories:[5]

Count III (Age Discrimination – ADEA). Plaintiff's age (over 40) was a determining

---

[5] As stated in section 6 of this Pre-trial Order, Plaintiff is stipulating to the dismissal of Counts I & II of his Complaint related to allegations under Title VII.

factor in Defendant's intentional decision to discriminate against him in the terms and conditions of his employment, including, but not limited to, by terminating his employment for false reasons, while similarly situated, substantially younger employees and/or independent contractors were either treated more favorably by not being subjected to the same type of unfounded criticisms of their work[6]; failing to follow the Defendant's progressive discipline policy as outlined in Defendant's policies and procedures[7]; failing to conduct performance reviews as required under Defendant's policies and procedures[8]; removing Plaintiff from job duties and projects and giving them to younger employees or independent contractors; hiring, and retaining substantially younger employees[9]; terminating Plaintiff for false, pretextual reasons; replacing Plaintiff in the interim with a less-qualified, substantially younger employee who did not work in the maintenance department instead of using older employees qualified for the job; and hiring the less-qualified, substantially younger employee who did not work in the maintenance department to replace Plaintiff.

Count IV (Retaliation – ADEA). Plaintiff had a good faith, reasonable belief that he was being subjected to unlawful employment practices including disparate treatment based upon his age (over 40) by Defendant in the terms and conditions of his employment

---

[6] Defendant made the same objection, and the Court issued the same ruling, as in n.1.

[7] Defendant made the same objection, and the Court issued the same ruling, as in n.2.

[8] Defendant made the same objection, and the Court issued the same ruling, as in n.3.

[9] Defendant made the same objection, and the Court issued the same ruling, as in n.4.

compared with similarly situated, substantially younger employees and/or independent contractors, and he reported the same to Defendant, including reporting that his direct supervisor asked when he was going to retire to Human Resources, prior to his termination. Defendant retaliated against Plaintiff because of his opposition to unlawful employment practices by terminating his employment for false, pre-textual reasons. Plaintiff's opposition to unlawful employment practices was a determining factor in Defendant's decision to subject him to adverse employment actions including the termination of his employment. Defendant's conduct was willful and/or outrageous as it intentionally and knowingly violated Plaintiff's rights under the ADEA and is sufficient therefore to warrant an award of liquidated damages.

**b) Defenses of Defendant.**

Defendant asserts the following defenses:

1. Plaintiff's ADEA claims, or parts thereof, fail to state a claim upon which relief can be granted against Defendant.

2. Plaintiff has failed to properly mitigate his damages, if any.

3. Plaintiff's claims are barred, in whole or in part, for Plaintiff's failure to exhaust administrative remedies or otherwise satisfy any conditions precedent in order to maintain his claims against Defendant.

4. Plaintiff lacks standing.

5. Plaintiff's claims under the ADEA, if any, are limited to the claims set forth in his EEOC charge.

6. Defendant has, at all times, acted in good faith without fraud or malice and in the exercise of its business judgment for legitimate non-discriminatory, non-retaliatory reasons and, assuming *arguendo* that either Plaintiff's age and/or any protected activity under the ADEA was a consideration in any adverse employment actions alleged by Plaintiff, which is denied, those actions would still have been taken based on those other legitimate reasons.

7. Plaintiff's claims for back or front pay, if any, must be offset by his interim or imputed earnings, to include any unemployment compensation benefits received by Plaintiff.

8. Plaintiff's claims for back or front pay, if any, are cut off because Plaintiff has retired and otherwise removed himself from the job market.

9. Plaintiff's claim for reinstatement and/or back or front pay, if any, is barred by his KPERS retirement.

10. Defendant exercised reasonable care to prevent and correct promptly any alleged discrimination or retaliation; and (b) Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

11. Plaintiff is not entitled to punitive, exemplary or liquidated damages of any kind against Defendant.

12. Plaintiff cannot recover both liquidated damages and prejudgment interest under the ADEA.

13. Plaintiff is barred from recovery by evidence acquired after Plaintiff's employment ended, which would provide a basis for his termination, or nonrenewal.

14. This action is frivolous and insubstantial having been filed without probable cause or reasonable investigation entitling Defendant to its costs, including reasonable attorneys' fees, incurred in defending this action.

15. Plaintiff is not entitled to a jury trial on some of his claims for relief.

16. Defendant objects to any claims asserted by Plaintiff which were not previously asserted in Plaintiff's Complaint (ECF No. 1) or not identified or disclosed during discovery.

## 5) DAMAGES AND NON-MONETARY RELIEF REQUESTED.

Plaintiff's damages include back wages and benefits from termination through trial; front pay and benefits; liquidated damages; attorneys' fees and costs; and interest.

1. Lost back wages and benefits from termination to date of trial: Plaintiff's earnings at the time of termination were approximately $68,500.00 annually, including benefits. Therefore, Plaintiff's lost wages and benefits as of the expected start of trial on December 6, 2021 (approximately 32 months post-termination) are approximately $183,000.00, plus annual raises, amounts presently unknown, minus mitigation earnings amounts, if any, as will be determined by the jury at trial.

2. Future lost wages and benefits: Although the law does not impose a precise limit on the amount of front pay that may be awarded, case law suggests that five years is a reasonable time for purposes of this damages estimate, yielding an estimated total amount

16

for front pay in a range of $340,000 plus applicable raises or other increases, and minus any mitigation earnings, totals unknown at this time. Plaintiff will update this calculation prior to trial or if Plaintiff has other mitigation earnings.

3. Liquidated damages: The ADEA provides for liquidated damages in the event of a willful violation in an amount equal to Plaintiff's lost wages and benefits as may be awarded by the jury at trial.

4. Plaintiff shall request his actual attorneys' fees and costs at an appropriate time if he is a prevailing party in this matter. Attorneys' fees are authorized for a prevailing party under the ADEA. Costs other than attorneys' fees are available to a prevailing party in any civil action.

5. Interest: Pre and Post judgment interest at the statutory rates permitted by law.

6. Non-monetary relief: Equitable relief, including reinstatement of Plaintiff as an alternative remedy to front pay, a declaration that Defendant has violated the ADEA, and an injunction prohibiting future violations of such acts for individuals similarly situated to Plaintiff.[10]

Defendant seeks its defense costs, including reasonable attorneys' fees, because this action is frivolous and insubstantial, having been filed without probable cause or

---

[10] Defendant objects to this claim for relief, arguing Plaintiff failed to assert it in his Complaint (ECF No. 1) and has never sought leave to amend or add either declaratory or injunctive relief in this case and he lacks standing to seek the injunctive relief requested; Plaintiff disagrees and argues instead that Plaintiff specifically requested "equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper" in his Complaint (ECF No. 1), which covers these requests. The Court overrules the objection, as Plaintiff pleaded equitable relief in the Complaint.

reasonable investigation. As of the date of the Pretrial Conference, Defendant had incurred approximately $47,000 in legal fees and expenses.

**6) AMENDMENTS TO PLEADINGS.**

The Plaintiff stipulates to the voluntary dismissal without prejudice of Counts I & II of his Complaint governing his Title VII claims from this action.

**7) DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by April 23, 2021. All discovery is complete, except to the extent that certain ESI discovery and supplementation is still ongoing, and the parties are still waiting on documents from the Kansas Human Rights Commission.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline for completion of discovery <u>if</u> all parties are in agreement to do so, under these circumstances the court will <u>not</u> be available to resolve any disputes that arise during the course of such extended discovery.

**8) MOTIONS.**

    **a) Pending Motions.**

        None.

    **b) Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Plaintiff intends to file the following motions:

1. Motions in Limine

Defendant intends to file the following motions:

1. Motion for Summary Judgment

2. Motions in Limine

3. Motion for Extension of Time to file Motion for Summary Judgment (which was orally requested during the Pretrial Conference and is addressed below)

4. Motion to Compel Plaintiff's responses to Defendant's discovery (if necessary)

The dispositive-motion deadline, as established in the scheduling order and any amendments, is May 21, 2021. During the Pretrial Conference, Defendant orally requested a 3-week extension of this deadline—until June 11, 2021. The Court grants this requested extension, effectively making the dispositive-motion deadline **June 11, 2021**.

The parties should follow the summary-judgment guidelines available on the court's website:

http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

    **c)**     **Motions Regarding Expert Testimony.** Not applicable, i.e., the parties

have stipulated that no expert testimony will be used in this case.

9) **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **December 6, 2021 at 9:30 a.m. in Kansas City, Kansas**. Trial is expected to take approximately five (5) days. The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial. If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, and proposed jury instructions.

IT IS SO ORDERED.

Dated May 24, 2021, at Kansas City, Kansas.

Teresa J. James
U.S. Magistrate Judge