## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**William J. Seymour,**

        **Plaintiff,**

**v.**                              **Case No. 20-cv-2282-JWL**

**Tonganoxie Unified School District No. 464,**

        **Defendant.**


## MEMORANDUM & ORDER

Plaintiff William J. Seymour filed this lawsuit against his former employer alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.[1]  This matter is presently before the court on defendant's motion for summary judgment on plaintiff's claims (doc. 47).  As will be explained, the motion is denied with respect to plaintiff's age discrimination claim to the extent that claim is based on the nonrenewal of plaintiff's contract; is granted as unopposed with respect to all age discrimination claims based on any action other than the nonrenewal of plaintiff's employment contract; is granted with respect to plaintiff's retaliation claim; is denied with respect to plaintiff's claim for damages; and is granted with respect to plaintiff's claim for declaratory and injunctive relief.


**I.**       **Facts**

---

[1] In the pretrial order, plaintiff stipulated to the dismissal of the Title VII claims set forth in his complaint. See Doc. 46, ¶ 6.

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party.  Plaintiff began his employment with defendant Tonganoxie Unified School District No. 464 as a custodian in 1991.  In 2016, he became the Facilities and Grounds Coordinator for the District.  His employment contract as Facilities and Grounds Coordinator was subsequently renewed on an annual basis for the 2016-17 school year; the 2017-18 school year; and the 2018-19 school year. Plaintiff's duties included coordinating fire and elevator inspections, snow removal, grounds mowing, HVAC maintenance, ensuring that rooms were cleaned in the evenings; ensuring that work orders were completed; maintaining all grounds; and minor maintenance of mowers and equipment.  Plaintiff supervised three full-time and one part-time maintenance staff members.  He also prepared budgets for his department.

Beginning in February 2017, Tonya Phillips was named the interim superintendent for the District.  At that time, plaintiff had been working under a Performance Improvement Plan ("PIP") for one month—a plan that the prior superintendent, Chris Kleidosty, had implemented in January 2017.  The evidence reflects that Mr. Kleidosty implemented the PIP for a variety of reasons, including an unprofessional outburst that plaintiff had during a building tour with officials from the Department of Homeland Security; general complaints about "dirty" facilities; plaintiff's inadequate organizational skills; and his temperament.  Once Ms. Phillips became interim superintendent, she met with plaintiff and advised him that she was keeping him on the PIP, with the exception that she did not require plaintiff to document his whereabouts every 15 minutes.

In April 2017, Ms. Phillips prepared plaintiff's annual performance review.  The review indicated that plaintiff met or exceeded expectations in all areas.  Notably, Ms. Phillips indicated in the written evaluation that plaintiff got along with his coworkers; made improvements in his

2

demeanor over the previous few months; was doing a "good job getting his work done"; had made a "positive change"; and that he was required to work under stress and in emergencies most of the time and "always adapts to the situation and is flexible and responsive." Although the evaluation indicated that plaintiff would "continue to work under the [PIP] to demonstrate improvement in all areas," plaintiff testified that Ms. Phillips advised plaintiff that he was no longer working under the PIP as of that date.  Nonetheless, Ms. Phillips testified that she was really only evaluating plaintiff on his attitude, which had improved greatly since Mr. Kleidosty's departure.  According to Ms. Phillips, plaintiff's work performance had not improved at all at the time of the evaluation and, in her mind, plaintiff remained on the PIP for the entire time that she was serving as interim superintendent.   Ms. Phillips testified that plaintiff had "anger issues," that the job was "overwhelming" for plaintiff, and that plaintiff was "in over his head" in his position.  She testified that she discussed her concerns about plaintiff's performance with members of the Board of Education, though it is unclear from the record whether those members were the same members who ultimately voted not to renew plaintiff's employment contract.  While Kaija Baldock has been a Board member since 2014 or 2015, the remaining members of the Board (including Jim Bothwell; Stephanie Shupe; Chris Gratton; and Drew Overmiller) have been in their positions only since sometime in 2018.  Moreover, it is undisputed that, shortly after the April 2017 evaluation, plaintiff's employment contract was renewed without incident for the following school year; that Ms. Phillips never again made any comments in writing about any performance deficiencies; and that Ms. Phillips did not complete a 2018 evaluation for plaintiff despite District policy requiring her to complete one.  And plaintiff's employment contract was renewed again, without incident, in 2018.

3

In April 2018, defendant hired Loren Feldkamp as the new superintendent beginning July 1, 2018.  From mid-May through June 2018, he met with Ms. Phillips to transition into the superintendent role.  Mr. Feldkamp testified that Ms. Phillips advised him at that time that plaintiff was working under a PIP and that she had not had success helping plaintiff to achieve the goals of the PIP.  They also discussed in a general sense concerns from past board members, staff and administration about plaintiff's performance.  Again, plaintiff insists that the PIP no longer applied to him as evidenced by his discussion with Ms. Phillips, his solid annual performance review, and the fact that his employment had been renewed another year.  Mr. Feldkamp testified that when he was hired, he was tasked with, among other things, evaluating the condition of the District's facilities and giving the Board an overall impression of the maintenance of the facilities and that the Board and the community expected improvements to the grounds and the facilities.

In July 2018, Mr. Feldkamp received complaints from the District's athletic director, the high school principal and the Board of Education about the condition of the football field at the high school.  Defendant's evidence reflects that the field was full of weeds and had very little grass; that trash was strewn about the field and surrounding areas; and the lines on the field were not straight or the correct distance apart.  According to Mr. Feldkamp, his discussions with plaintiff about the football field were not productive and, in August 2018, he decided to outsource maintenance of the football field (and the flower beds at the front of the high school) to Mitch Loomis, an individual who had performed grounds work for the City's recreation commission and maintained the City's baseball fields.  Mr. Loomis performed work for the District as an independent contractor for the duration of the football season.  Plaintiff was upset that he was removed from his duties with respect to the football field.

4

In September 2018, plaintiff and Mr. Feldkamp had a heated discussion about Mr. Feldkamp's decision to outsource maintenance of the football field. Mr. Feldkamp testified that, during this conversation, he asked plaintiff if he was planning on retiring. According to Mr. Feldkamp, he asked about retirement because plaintiff had previously made comments about retiring. Beginning in September 2018 and continuing on a regular basis through December 2018, Mr. Feldkamp reported concerns to the Board that he had regarding the facilities and grounds leadership. These reports occurred during executive sessions of regular Board meetings. Each Board member avers that they were made aware of concerns that Mr. Feldkamp had about plaintiff's performance.

Plaintiff testified that Mr. Feldkamp asked him about his retirement plans on numerous other occasions: In December 2018, Mr. Feldkamp asked him "Are you thinking about retirement?"; on two occasions in January 2019 Mr. Feldkamp asked if he was planning on retiring; and in mid-February Mr. Feldkamp asked him if he was planning on retiring.[2] Plaintiff testified that he did not tell anyone about the September or December 2018 retirement inquiries. After the first retirement inquiry in January 2019, plaintiff went to Audra Boone, the District's Human Resources Coordinator. He told Ms. Boone that Mr. Feldkamp asked him if he was planning on retiring. Ms. Boone testified that she had no recollection of plaintiff telling her about

---

[2] In response to the motion for summary judgment, plaintiff also asserts that Mr. Feldkamp made remarks that the Facilities and Grounds department needed a "new set of eyes" and a "new vision." Doc. 53, p. 212; Plaintiff's Stmt. of Add'l Facts ¶ 569. This testimony does not appear in the excerpt cited by plaintiff and the court could not find that testimony anywhere in the deposition testimony submitted by the parties. While this may be just an oversight on the part of counsel, such carelessness tends to leave the impression that plaintiff is playing "fast and loose" with the facts.

5

Mr. Feldkamp's query.  After Mr. Feldkamp's second inquiry in January 2019, plaintiff again went to Ms. Boone (in early February) to advise her that he believed that Mr. Feldkamp wanted him to retire.  He did not tell Ms. Boone or anyone else about the February 2019 query.  Plaintiff did not talk to anyone else at the District about Mr. Feldkamp's inquiries other than Ms. Boone and he has no knowledge of whether Ms. Boone shared that information with anyone else.  Mr. Feldkamp testified that Ms. Boone never told him that plaintiff had advised her about his retirement questions or had otherwise complained about Mr. Feldkamp.  According to Mr. Feldkamp, he and Ms. Boone never had any discussions about plaintiff in any respect.

In October 2018, Mr. Feldkamp raised to the Board of Education the possibility of dividing up plaintiff's duties, leaving plaintiff in charge of facilities and maintenance and having someone else take over grounds, because the job was simply too big for plaintiff.  He also raised this possibility with plaintiff and, in late February or early March 2019, he asked Mr. Loomis whether he might be interested in helping to divide up the responsibilities of plaintiff's position.  Mr. Loomis, however, testified that Mr. Feldkamp asked him about stepping into an interim or potentially permanent position as the Facilities and Grounds Coordinator and mentioned that plaintiff might be retiring.  Mr. Feldkamp testified that, by late March 2019, he was still hoping to separate plaintiff's duties out so that plaintiff would be handling facilities and maintenance and someone else would be the grounds coordinator.  But at the same time, Mr. Feldkamp had come to the decision that "plaintiff's contract may need to be nonrenewed."

At the April 8, 2019 board meeting, Mr. Feldkamp and the board discussed plaintiff's employment contract in executive session.  Ms. Phillips and Ms. Boone, in her capacity as the Clerk of the Board of Education, also attended.  Although there was some discussion about

6

splitting up plaintiff's position, Mr. Feldkamp testified that several board members expressed concern that a division of responsibilities would not work because of plaintiff's temperament. Mr. Bothwell testified that a division of responsibilities was not seen as a viable option because plaintiff lacked the requisite leadership skills. Ultimately, the decision was made to not renew plaintiff's contract. Although defendant asserts that only the Board has the authority to hire and fire employees, the evidence viewed in plaintiff's favor clearly suggests that the Board followed the recommendation of Mr. Feldkamp and trusted his assessment of the situation. At the same meeting, Mr. Feldkamp suggested bringing Mr. Loomis in as an interim Facilities and Grounds Coordinator. The Board approved that arrangement and Mr. Loomis agreed. Plaintiff was 58 years old at the time and Mr. Loomis was in his early 30s.

On April 9, 2019, the day following the Board meeting, Mr. Feldkamp advised plaintiff that the Board "wanted to go in a different direction" and his contract would not be renewed. Plaintiff was upset. In fact, he was so upset that he cancelled the reservation for chairs for the 2019 high school graduation ceremony. He went to his office, packed his things, and turned in his keys. Plaintiff utilized paid time off for the remainder of his contract, which ended June 30, 2019. On April 29, 2019, plaintiff saw board member Kaija Baldock jogging in the road and he made obscene gestures at her. Ms. Baldock testified that plaintiff drove his truck across the center line toward her and yelled at her, which shocked and scared her. Plaintiff was charged with disorderly conduct and he later admitted his guilt to that charge.

Plaintiff began receiving retirement benefits under the Kansas Public Employees Retirement System (KPERS) as of July 1, 2019. A search committee was formed to find a

permanent replacement for plaintiff and Mr. Loomis was ultimately selected from the field of candidates.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.[3]

## II.   Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).   A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[3] Plaintiff asks the court to deny defendant's motion for summary judgment because defendant's Statement of Facts violates Federal Rule of Civil Procedure 56, Local Rule 56.1, and the court's scheduling order. Specifically, plaintiff argues that defendant's statement of 535 facts is grossly excessive, burdensome and largely immaterial.   The court agrees that defendant's statement of facts is voluminous and does contain a number of facts that are unnecessary to the resolution of the motion.   But plaintiff bears at least some responsibility for the volume of the motion in light of the way in which he set forth his claims in the pretrial order.   Rather than expressly limiting his claim of age discrimination to one based on the nonrenewal decision, plaintiff identifies numerous theories of recovery under the ADEA beyond that decision, including "terms and conditions" claims that by their nature are more difficult and cumbersome to target in a motion for summary judgment.   In response to defendant's motion, plaintiff has now clarified that he only intends to assert a single claim of age discrimination based on the nonrenewal decision (in addition to his retaliation claim).   But the court understands why defendant, in an abundance of caution based on the pretrial order, attempted to address every nuance of its employment relationship with plaintiff. Plaintiff also challenges the form of defendant's statement of facts, noting that a significant number of the facts begin with the language that a certain witness "testified" to the fact, as opposed to simply stating the fact.   While the court agrees with plaintiff that defendant's form does not necessarily comport with the moving party's burden on summary judgment, in this case there does not appear to be any prejudice and plaintiff has nonetheless met his burden of showing how the substance of a witness's testimony is disputed.

party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue."  *Id*. at 1143-44.

## III.     Age Discrimination Claim

In the pretrial order, plaintiff asserts that defendant's decision to not renew plaintiff's employment contract was based on plaintiff's age.[4]   As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 627 (10th Cir. 2012). Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id*. While the Circuit does not rigidly require certain prima facie elements, plaintiff must generally establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If he establishes a prima facie case, the burden shifts to defendant to assert a legitimate,

---

[4] As noted earlier, the pretrial order arguably sets forth numerous other discrete claims of age discrimination such as failing to conduct a performance review, removing certain job duties from plaintiff, and failing to follow defendant's progressive discipline policy with respect to plaintiff. Defendant moves for summary judgment on these claims and, in response, plaintiff has clarified that he is not asserting discrete claims based on these acts and omissions.  Plaintiff is relying on evidence of these acts and omissions to support his argument that defendant's proffered reason for its nonrenewal decision is pretexual.  Defendant's motion for summary judgment, then, is granted as unopposed.

nondiscriminatory reason for the adverse employment action. *Id*. If defendant meets this burden, summary judgment against plaintiff is warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id*. (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).[5]

A.    *Plaintiff's Prima Facie Case*

In its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of age discrimination because he has not come forward with sufficient evidence that he was performing satisfactory work and has not come forward with any evidence suggesting that he was treated less favorably than younger employees.  These arguments are rejected. Defendant relies on plaintiff's job performance as the reason for its nonrenewal decision and, thus, the court will not consider plaintiff's job performance in connection with plaintiff's prima face case. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis).  And plaintiff's failure to come forward with evidence that he was treated less favorably than younger employees

---

[5] As a threshold issue, defendant argues that, as a governmental entity, it is presumed to have acted in good faith.  The cases cited by defendant apply the presumption to adjudicators for purposes of claims of impermissible bias under the Due Process Clause. *See Withrow v. Larkin*, 421 U.S. 35, 41-42 (1975) (discussing good faith presumption in context of due process claim); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737 (10th Cir. 1991) (same); *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482 (1976) (same).  In reply, defendant points to *Abbott v. Perez*, 138 S. Ct. 2305 (2018) as an example of a case involving an application of the good faith presumption in the context of claims of intentional discrimination.  But *Abbott* was a redistricting case involving the presumption of legislative good faith for purposes of asserted Equal Protection Clause violations and is clearly not applicable here.  This argument is rejected.

is not fatal to his claim.  The Tenth Circuit has repeatedly cautioned that comparison to similarly situated employees is not required as part of a plaintiff's prima facie case.  *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (collecting cases); *English v. Colo. Dept. of Corrs.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (In disciplinary discharge cases, a "plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*.").  As the Circuit reiterated in *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019), the "critical prima facie inquiry . . . is whether the plaintiff has demonstrated that the adverse employment action . . . occurred under circumstances which give rise to an inference of unlawful discrimination."  936 F.3d at 1037.  As explained below in the connection with plaintiff's pretext evidence, plaintiff has come forward with evidence from which a jury could reasonably draw an inference of age discrimination.  This aspect of defendant's motion is denied.

B.      *The Pretext Analysis*

Because plaintiff's evidence is sufficient to establish a prima facie case of age discrimination, the court turns to whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for the nonrenewal decision.  In assessing whether defendant has met its burden, the court bears in mind that the "burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc*., 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id*. According to defendant, it "elected not to renew Plaintiff's

employment after having had him on a plan of improvement for several years based on his unsatisfactory job performance." The burden of proof, then, shifts back to plaintiff to identify evidence upon which a reasonable jury could find that defendant's proffered reason is pretextual. Plaintiff has carried his burden.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc*., 644 F.3d 1096, 1102 (10th Cir. 2011).

Viewed in the light most favorable to plaintiff, the evidence in the record is sufficient to raise a triable issue on pretext. To begin, there is evidence that plaintiff was not working under the PIP at the time the nonrenewal decision was made. Plaintiff testified that Ms. Phillips told him during his April 2017 evaluation that he was no longer working under that improvement plan. There is scant evidence in the record that Mr. Feldkamp relied on the PIP or any specific

12

deficiencies related to the PIP when he recommended the nonrenewal of plaintiff's contract. There is no evidence that anyone mentioned or discussed plaintiff's January 2017 PIP at the time of the nonrenewal decision in April 2019.  Moreover, as highlighted by plaintiff, his most recent performance review, in April 2017, was satisfactory in all respects.  It is also significant that Mr. Feldkamp, in late March 2019, was still hoping to split plaintiff's position and leave plaintiff in charge of facilities and maintenance which, of course, suggests that Mr. Feldkamp was not all that concerned with plaintiff's performance.  All of this evidence, then, casts doubt on defendant's assertion that the nonrenewal decision was somehow tied to the January 2017 PIP and plaintiff's unsatisfactory job performance since that time.

Additional evidence in the record further supports a finding of pretext here.  While defendant now asserts that the nonrenewal decision was based on years of poor performance, there is evidence that the decision was based not so much on poor performance but on more subjective factors such as plaintiff's personality and temperament.  And when Mr. Feldkamp told plaintiff about the nonrenewal decision, he said nothing about performance issues.  He told plaintiff that the decision was simply a matter of wanting to go in a "different direction."  And a reasonable jury could conclude that the "different direction" was the direction of a man in his early 30s. Indeed, the evidence reflects that while Mr. Feldkamp claims that, in late March 2019, he was still hoping to find a way to keep plaintiff employed, he was asking Mr. Loomis at the same time whether he would consider a permanent position as the Facilities and Grounds Coordinator because plaintiff might be retiring.  There is no evidence, however, that plaintiff ever told Mr. Feldkamp that he had plans to retire in the near future.

This, of course, leads to Mr. Feldkamp's fairly consistent questions to plaintiff about his retirement plans. Defendant urges that these questions cannot possibly raise an inference of age discrimination and, at most, are stray remarks with no connection to the nonrenewal decision. In the specific context of this case and in combination with plaintiff's other evidence of pretext, the court disagrees. Mr. Feldkamp asked about plaintiff's plans numerous times in a short window leading up to the nonrenewal decision. Viewing the evidence in the light most favorable to plaintiff, Mr. Feldkamp was not asking about retirement in the context of succession planning but during times of frustration with plaintiff and in the same time frame during which Mr. Feldkamp wanted to bring in Mr. Loomis, a much younger individual. In essence, the record reflects that Mr. Feldkamp wanted plaintiff to retire to clear the way for Mr. Loomis and to save Mr. Feldkamp from having to make the nonrenewal decision at all.

The court need not consider whether any piece of evidence discussed above, if considered by itself, would provide the necessary evidence of pretext to withstand summary judgment. The totality of this evidence, considered in the light most favorable to plaintiff, creates a reasonable inference that defendant's stated reason for its nonrenewal decision is not genuine, that the reason is therefore pretextual, and that defendant instead nonrenewed plaintiff's contract for an impermissible reason. For the foregoing reasons, a jury trial is required on plaintiff's age discrimination claim.[6]

---

[6] Defendant seems to suggest in its motion that plaintiff, to survive summary judgment, must establish not only pretext but also that defendant acted with discriminatory intent. Notably, the cases relied upon by defendant arose after a full trial on the merits. *See Sorenson v. City of Aurora*, 984 F.2d 349 (10th Cir. 1993); *Whalen v. Unit Rig, Inc*., 974 F.2d 1248 (10th Cir. 1992). In the summary judgment context, the Circuit has rejected this standard in favor of a rule that permits a plaintiff to survive summary judgment with evidence supporting a prima facie case and

**IV.    Retaliation Claim**

Plaintiff asserts in the pretrial order that the nonrenewal of his contract was in retaliation for his complaints to Ms. Boone about age discrimination.  The court assesses plaintiff's retaliation claim under the *McDonnell Douglas* framework.  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff must show (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action.  *Id.*  If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action.  *Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 656 (10th Cir. 2013).  Plaintiff, then, must show that defendant's stated reason is pretextual.  *Id.*

Defendant moves for summary judgment on plaintiff's retaliation claim on several independent grounds.  Defendant asserts that plaintiff never engaged in protected activity because his complaints to Ms. Boone about Mr. Feldkamp's retirement inquiries cannot reasonably be construed as complaints of age discrimination; that plaintiff cannot establish a causal connection between any protected activity and the nonrenewal of his contract because Ms. Boone never

---

discrediting the employer's proffered reason for the employment decision. *See Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1280 (10th Cir. 2010) (reversing grant of summary judgment where district court utilized "pretext plus" standard that the Circuit had "definitively rejected") (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated")).

shared plaintiff's complaints with Mr. Feldkamp and he was otherwise unaware of any complaints of age discrimination; and that plaintiff cannot establish that defendant's asserted rationale for the nonrenewal of plaintiff's contract is pretextual. Because the record contains no evidence from which a jury could reasonably conclude that Mr. Feldkamp had knowledge of plaintiff's complaints, the court grants summary judgment in favor of defendant and declines to address defendant's remaining arguments in support of its motion.[7]

It is axiomatic that a plaintiff asserting a claim of retaliation "must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to take adverse action against him had knowledge of his protected activity." *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019). The undisputed evidence reveals that plaintiff, once in January 2019 and once in early February 2019, complained to Ms. Boone that Mr. Feldkamp had asked him if he planned on retiring and that he believed that Mr. Feldkamp wanted him to retire. Plaintiff does not base his retaliation claim on any other asserted protected activity. Ms. Boone testified that she had no recollection of plaintiff talking to her about retirement inquiries from Mr. Feldkamp but that it was possible that he did so. Mr. Feldkamp testified that Ms. Boone never talked to him about any complaint plaintiff made to her (or discussion plaintiff had with her) about retirement comments or age discrimination or any other matter. And plaintiff himself testified that he has no

---

[7] Plaintiff contends that defendant did not argue in its opening brief that Mr. Feldkamp did not know about plaintiff's complaints to Ms. Boone such that the court should not entertain the argument. The court disagrees. While defendant did not include this argument under its "causal connection" heading, defendant did argue (albeit in connection with the first element of plaintiff's prima facie case) that Ms. Boone "did not tell Defendant's board or Superintendent Feldkamp or anyone else about Plaintiff allegedly complaining to her about Superintendent Feldkamp's comments about retirement." Doc. 48, p. 80.

knowledge if Ms. Boone told Mr. Feldkamp that he spoke with her about Mr. Feldkamp's retirement inquiries.

Nonetheless, plaintiff contends that a jury could reasonably infer that Mr. Feldkamp had knowledge of plaintiff's complaint based on several pieces of evidence: the temporal proximity between plaintiff's second complaint to Ms. Boone and Mr. Feldkamp's decision to recommend the nonrenewal of plaintiff's contract; the physical proximity of Ms. Boone's office and Mr. Feldkamp's office; the fact that Ms. Boone reports directly to Mr. Feldkamp; and the fact that Ms. Boone serves as the Board of Education clerk who, by virtue of this position, was present at the Board meeting during which Mr. Feldkamp made the nonrenewal recommendation and wrote, signed and delivered to plaintiff the Notice of Intent to Non-Renew Contract.[8]   None of this evidence, standing alone or taken together, is sufficient to create a factual dispute on the issue of whether Mr. Feldkamp had knowledge of plaintiff's complaints to Ms. Boone at the time he recommended the nonrenewal of plaintiff's contract.

The Tenth Circuit has squarely rejected plaintiff's argument that the temporal proximity between his complaint and the nonrenewal recommendation creates an inference of knowledge on the part of Mr. Feldkamp.  As explained by the Circuit in *Singh*:

> To be sure, we have recognized that a plaintiff may show a causal connection by presenting evidence that the "temporal proximity" between the protected conduct and the materially adverse action "justif[ies] an inference of retaliatory motive."

---

[8] Plaintiff does not dispute that the Board had no knowledge of any complaints made by plaintiff. Instead, plaintiff argues that the Board's lack of knowledge is simply not relevant because none of the Board members recommended the nonrenewal of plaintiff's contract; rather, the Board simply (and perhaps blindly) followed the recommendation of Mr. Feldkamp, whom plaintiff identifies as the sole decisionmaker with respect to the nonrenewal of plaintiff's contract.  For purposes of defendant's motion, then, the court focuses solely on the evidence, if any, of Mr. Feldkamp's knowledge of plaintiff's protected activity.

*Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (internal quotation marks omitted). But a plaintiff who seeks to show causation in this manner still must present evidence that the decisionmakers knew of the protected conduct. *See Metzler*, 464 F.3d at 1171–72 (evidence that supervisor knew of plaintiff's protected activity at most six weeks before termination allows for an inference of causation); *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018) (employer's knowledge of protected conduct is prerequisite for prima facie showing of causation, even when there is temporal proximity).

936 F.3d at 1043-44.  Thus, plaintiff must establish the requisite knowledge as a prerequisite to a separate showing of causation. *Accord Hysten Burlington N. & Santa Fe Ry. Co*., 296 F.3d 1177, 1184 (10th Cir. 2002) (proximity between protected activity and alleged retaliatory act "is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity").

Plaintiff's reliance on the reporting relationship between Ms. Boone and Mr. Feldkamp and the location of their offices in an effort to suggest that Mr. Feldkamp surely must have known about plaintiff's complaints is similarly unpersuasive.  Courts have routinely held that evidence suggesting that a decisionmaker "could have known" or "should have known" about an employee's protected activity is not sufficient to establish the requisite knowledge and that a plaintiff must come forward with evidence that a decisionmaker had "actual knowledge" of the employee's protected activity.  *See Eaton v. J. H. Findorff & Son, Inc*., 1 F.4th 508, 513 (7th Cir. 2021) (rejecting as speculative plaintiff's argument that her supervisor must have known about charge of discrimination because the company's compliance officer responded to the charge); *Malone v. U.S. Att'y Gen*., 2021 WL 2134850, at *6 (11th Cir. May 26, 2021) (rejecting as speculative plaintiff's argument that his supervisors must have known about EEO complaint because the "normal procedure" would be for EEO counselor to contact supervisors to put them

on notice of EEO complaint; plaintiff pointed to no evidence that his supervisors, in fact, had knowledge of the complaint).  At most, plaintiff's evidence concerning office location and the reporting relationship between Ms. Boone and Mr. Feldkamp shows that Ms. Boone had the opportunity to tell Mr. Feldkamp about plaintiff's complaints.  But having the opportunity to share that information is not the same as actually doing so.  *See Martin v. Fin. Asset Mgmt. Sys., Inc*., 959 F.3d 1048, 1054 (11th Cir. 2020) (without more, evidence showing that decisionmaker had a conversation with HR official between protected activity and termination decision was not evidence of decisionmaker's knowledge); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) (evidence that some members of Human Resources knew about plaintiff's protected activity was not enough to establish that members of hiring committee knew about that activity).

Plaintiff has failed to come forward with evidence from which a reasonable factfinder could conclude that Mr. Feldkamp had knowledge of plaintiff's complaints to Ms. Boone and has failed to come forward with any evidence calling into question Mr. Feldkamp's testimony that Ms. Boone never told him about any complaint plaintiff made to her about retirement comments, age discrimination or any other matter.  Summary judgment in favor of defendant is warranted on this claim.  *Singh v. Cordle*, 936 F.3d 1022, 1042-43 (10th Cir. 2019) (affirming district court's grant of summary judgment on retaliation claim where plaintiff had no evidence that decisionmakers knew about protected activity).

## V.  Remaining Issues

In the pretrial order, plaintiff seeks damages including back wages and benefits; front pay and benefits; and liquidated damages.  Plaintiff also seeks a declaration that defendant has violated

the ADEA and an injunction prohibiting future violations of the ADEA for individuals similarly situated to plaintiff.  Defendant moves for summary judgment on each item of damages as well as plaintiff's claims for declaratory and injunctive relief.

*After-Acquired Evidence*

Citing *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 352 (1995), defendant asserts in its motion that plaintiff cannot recover backpay in light of undisputed evidence that plaintiff cancelled the chair rental order for graduation and verbally assaulted a Board member. According to defendant, it would have decided to nonrenew plaintiff's employment contract based on these serious acts of misconduct if it had not already decided to do so.  *McKennon*, however, addressed after-acquired evidence of pre-termination wrongdoing—that is, evidence of pre-termination wrongdoing that an employer obtains (typically during the discovery process) after the termination decision.  *Id*. at 361-62.  As plaintiff highlights here, the wrongdoing occurred after the nonrenewal decision was made and, according to plaintiff, was a direct result of that nonrenewal decision.  Whether post-termination misconduct can serve to limit damages was addressed by the Circuit in *Medlock v. Ortho Biotech, Inc*., 164 F.3d 545 (10th Cir. 1999).  In that case, the plaintiff was terminated in retaliation for filing a claim of race discrimination.  *Id*. at 548. At his unemployment benefits compensation hearing, the plaintiff verbally abused the defendant's counsel.  *Id*.  at 555. The defendant sought to limit front pay and reinstatement because of the plaintiff's conduct at the hearing, arguing that he would have been fired for that conduct alone. *Id*.  The district court refused to instruct the jury that the plaintiff's post-termination conduct could serve to limit damages.  *Id*.

On appeal, the Tenth Circuit affirmed the district court's decision. While the Circuit could "not foreclose the possibility that in appropriate circumstances the logic of *McKennon* may permit certain limitations on relief based on post-termination conduct," the court emphasized that in cases "in which the alleged misconduct arises as a direct result of retaliatory termination, the necessary balancing of the equities hardly mandates a *McKennon*-type instruction on after-occurring evidence." *Id*. Because the plaintiff's misconduct at the hearing was "occasioned by" his termination, the court held that the failure to give a *McKennon* instruction was not reversible error. *Id*.

Here, like in *Medlock*, the evidence supports a reasonable inference that plaintiff's misconduct was a direct result of the nonrenewal decision and that, stated another way, plaintiff would not have engaged in that conduct but for defendant's nonrenewal decision. While defendant acknowledges *Medlock* in a footnote of its reply, it asserts only that plaintiff engaged in "precisely" the type of conduct to which the Circuit would likely apply *McKennon*. But defendant has not addressed the key issue of whether plaintiff's misconduct was a direct result of the nonrenewal decision. As such, defendant has not demonstrated that it is entitled to summary judgment on this issue. *See Jones v. Nissan North Am., Inc*., 438 Fed. Appx. 388 (6th Cir. 2011) (applying *Medlock* to situation where the plaintiff was still an employee at the time of his misconduct but the adverse action had already occurred; district court erred in giving *McKennon* instruction because misconduct while on medical leave was directly tied to adverse action).[9]

---

[9] Defendant makes much of the fact that plaintiff's termination was not effective until July 2019 in an attempt to bring his conduct clearly within the confines of *McKennon*. Defendant's semantics aside, it is clear that plaintiff's wrongdoing did not occur until after the adverse decision was taken by defendant.

*Failure to Mitigate*

Defendant also moves for summary judgment on plaintiff's claims for back pay and front pay based on plaintiff's failure to mitigate his damages. According to defendant, plaintiff applied for retirement to KPERS in April 2019 and he began receiving benefits in July 2019.  Defendant contends that plaintiff's application and receipt of KPERS retirement benefits evidences plaintiff's clear intent to remove himself from the workforce.   Defendant also asserts that plaintiff's receipt of KPERS benefits rendered him unable to apply for employment with a KPERS employer for a period of 180 days.  The motion is denied.  Even assuming plaintiff could not apply for employment with another KPERS employer during that 180-day period, defendant does not address plaintiff's efforts to find suitable employment with a non-KPERS employer.  And plaintiff avers that he has continuously looked for employment since the nonrenewal decision and does not consider himself retired.[10]  Thus, the evidence reflects that plaintiff made some effort to find other employment and the jury must decide whether that effort was sufficient. The court also notes that defendant has the burden of proof on this affirmative defense and it has not come forward with evidence that "suitable positions" were available to him. *See McClure v. Independent Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). This defense is clearly not amenable to summary judgment.

---

[10] Defendant generally objects to plaintiff's affidavit as self-serving and not based on personal knowledge, but does not controvert the fact that plaintiff has continually looked for employment since the nonrenewal decision.  On this point, plaintiff's affidavit is clearly sufficient to raise a disputed issue of fact on defendant's mitigation defense.

*Benefits*

Defendant moves for summary judgment on plaintiff's claim for benefits because plaintiff has no evidence that he purchased substitute insurance coverage or that he incurred out-of-pocket expenses that would have been reimbursed under defendant's insurance plan.  Plaintiff has not responded to this argument and, in its reply, defendant asks the court to grant the motion as unopposed.  The court declines to do so because defendant's argument concerning plaintiff's claim for benefits is buried in a lengthy footnote on page 82 of its 89-page brief.  Even the court missed this argument during its initial review of defendant's motion.  If summary judgment was clearly warranted on the merits, the court would certainly consider the issue.  But defendant, with its reliance on a single case from the Ninth Circuit more than 30 years ago, has not persuaded the court that summary judgment is warranted on this issue.  *See Hale v. Emporia State Univ.*, 2020 WL 5038785, at *9 (D. Kan. Aug. 26, 2020) (identifying Circuit split on whether value of lost health insurance should be measured by the cost of insurance premiums the employer would have paid or by out-of-pocket expenses incurred by employee and noting that Tenth Circuit has not yet decided the issue).  The motion is denied.

*Liquidated Damages*

Defendant, relying on *Cooper v. Asplundh Tree Service*, 836 F.2d 1544 (10th Cir. 1988), moves for summary judgment on plaintiff's claim for liquidated damages, asserting that there is insufficient evidence that age discrimination was the "predominant" factor in defendant's decision.  While plaintiff highlights that *Cooper* was decided in a different procedural context (*i.e.*, after a jury verdict), the real problem with defendant's reliance on *Cooper* is that the

"predominant factor" standard enunciated therein was squarely rejected by the Supreme Court in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). To obtain liquidated damages, a plaintiff need not show that age discrimination was the "predominant" factor in the defendant's decision but must show only that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* The motion is denied.

*Declaratory and Injunctive Relief*

In the pretrial order, plaintiff seeks a declaration that defendant violated the ADEA and an injunction prohibiting future violations against individuals similarly situated to plaintiff. Defendant moves for summary judgment on both claims, asserting that the claim for declaratory relief is superfluous in light of plaintiff's damages claim and that plaintiff lacks standing to pursue his claim for injunctive relief. Plaintiff has not responded to either argument. Defendant's motion is granted on these issues. *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (declaratory relief in the form of acknowledgement that prior violation occurred is superfluous when pursued in conjunction with a claim for monetary damages); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir.1990) (plaintiff lacks standing to pursue claim based on a violation of another's civil rights).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 47) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this  6th  day of October, 2021, at Kansas City, Kansas.


_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge